# Wytheville.

## STEWART'S ADM'R v. N. N. & M. V. Co.

### JUNE 19th, 1890.

NEGLIGENT INJURIES—*Case at bar.*—Defendant's coal pier had, as usual, uncovered chutes through which coal was dumped from cars into vessels. These were dangerous traps. But safe walk-ways were provided, and at night the pier was lighted by electricity. Plaintiff's intestate, the engineer of a steamship lying ready to take on coal, was acquainted with such piers, and was warned of the uncovered chutes and told to wait for a guide before going ashore. Nevertheless he proceeded at night alone across the pier, and falling into a chute, was killed: *held*, his own negligence was the proximate cause of the accident.

Argued at Richmond.    Decided at Wytheville.

Error to judgment of circuit court of Warwick county, rendered September 21, 1888, in an action of trespass on the case wherein the plaintiff in error, the administrator of James Stewart, deceased, was plaintiff, and the Newport News & M. V. Company, was defendant. Opinion states the case.

*M. T. Hughes* and *Joseph Christian,* for the plaintiff in error.

*Wm. J. Robertson, H. T. Wickham* and *A. S. Segar,* for the defendant in error.

LACY, J., delivered the opinion of the court.

This action was by the plaintiff in error to recover damages

for the alleged negligent killing or causing the death of James Stewart, his intestate.

The defendant in error is the owner and operator of a coal pier at Newport News. On the 19th day of September, 1887, an English steamship came up to the said pier to take in a supply of coal; the chief engineer, James Stewart, the deceased, asked leave of the health officer to come on shore to get some tobacco, which he wished to buy in the town, which request the health officer refused; when the deceased said that he would have to go on the pier to see his coal weighed, and proposed that he then could go on shore and get the tobacco, to which suggestion the health officer made no objection, but directed him not to be in a hurry, to wait until he was called, that he would be called when the coal was ready to be weighed; that those in charge of the pier would send a messenger for him, who would show him to the office, and informed him that this pier was a dangerous place, and that the coal chutes were all uncovered.

The captain and the health officer then left the ship and proceeded by the ground floor to the shore. Immediately after this, the deceased left the ship and proceeded to the office; and after going to the office where the coal had not been brought, and where he could not then get it weighed. On his return to the ship, he walked into a chute and was killed. The deceased probably left the ship by the ground floor of the pier, as the ship was close to this, and ascended to the second floor, and ascended by steps there placed, to the office. The second floor was provided with a walk-way along the centre, and the third floor was provided with a walk-way on each side of the track on which the cars came, bringing coal for delivery, and in the middle of this track were holes or chutes with funnel-shaped attachments, into which the coal was dumped to fall into the ships or other water craft which lay alongside the pier, for the purpose of being loaded, or supplied with needed coal. The deceased could have walked along the walk-ways, and would

thus have avoided danger, but he walked along the track in the full blaze of electric lights, which illuminated the whole floor, as also the second floor. The deceased saw clearly, or could have seen the walk-ways and the track, and when he reached the chute he was very close to a bright electric light, placed on a pole, and which the evidence shows, lit up this hole and all its surroundings. He was seen by the clerk at the office just as he stepped into the hole, too late to warn him.

The action against the company is based upon the alleged negligence of the said company in not covering up these chutes. There was a demurrer to the evidence in the circuit court by the defendant, and the jury assessed the damages, subject to the judgment of the court in the demurrer to the evidence, at $10,000, but the court sustained the demurrer to the evidence, and the plaintiff brought the case to this court by writ of error.

There is no evidence in the case, and no charge of negligence against the company, tending to show negligence, except such as was to be found in the construction of the pier. The evidence shows that the pier was first class in construction in every respect, and that the question of covering up these chutes, had been under consideration by the engineers, and it was considered impracticable to cover up these chutes without increasing the danger lurking about them, and in order to prevent injury to strangers who came there on business, and to the employees, the brilliant electric lights had been provided by night, which caused them to be as obvious at night as by daylight; no coal piers any where in the country are covered, as is proved by witnesses who had inspected them in many large cities elsewhere; there is no ground upon which we can say that it is negligence in the owner and operator of a coal pier to keep the chutes open; it is held by those best informed and most capable of judging, and most interested in the safe condition of this business, that to cover their openings would not only impair and obstruct the business connected with them, but would increase the risk to life and limb, as they would

sometimes be left open, or imperfectly adjusted, and these constitute a trap extremely dangerous to life, or be sometimes accidentally misplaced or disturbed.

But if it shall be successfully claimed and shown that it would be best that these should be covered, however expensive and troublesome, and then properly guarded at all times so as to render them absolutely safe, and this failure could be imputed to the company for negligence, there is another principle which in this case would defeat the recovery of the plaintiff.

That a person who, by his own default, has brought upon himself a loss or injury, can claim no compensation for it from another, is a principle of universal application; and it is equally true, that if his imprudence or negligence has so materially contributed to the loss or the injury that but for such imprudence or negligence it would not have occurred, he can claim no recompense from another, who has been instrumental in causing it, unless the latter upon the discovery of the danger into which the party had brought himself by his own fault, could, by the use of such diligence as the extent of the danger and the nature of the threatened injury required, have avoided the occurrence. If, in other words, the injury, though inflicted by another, was unavoidable by the exercise of proper diligence, by reason of the situation of peril into which the party by his own neglect had placed himself, he must be considered as the author of his own misfortune.

That the deceased contributed to his death by his own negligence in this case is clear.

(1.) He was the chief engineer of a steamship which was constantly taking in coal, and as it was his business and custom to go on these piers to see to the weighing of the necessary coal for the ship, it is not unreasonable to suppose that he knew that these chutes were uncovered, as they were always uncovered, as are all coal piers, as is proved by the evidence in this case.

(2.) He had before coaled at this pier, perhaps more than once. His face was familiar to the health officer. He therefore knew that these chutes at this pier were uncovered generally, and always before this.

(3.) He certainly knew that they were uncovered on this pier at this time, because he was distinctly so informed by the health officer.

(4.) He was warned to wait for a guide, that his trip would not only be dangerous, but probably useless, unless he waited for the messenger, who would be sent for him to give him notice that his coal was ready, and to perform the very important part of guiding him to the office in safety over these dangerous ways. He chose to disregard this caution, and so neglected wholesome safeguards.

(5.) When leaving the office, where he really had none but a pretended mission, he saw safe planked-ways, one on each side of the track, which he declined to use, and walked upon the track, which he knew to be honeycombed with open chutes.

(6.) When he reached the chute in question, which was wide open and under the full blaze of an electric light, which plainly showed it to all who chose to look, he neglected to use his eyes, and walked into it, and to his death; when, by the simple precaution of looking where he stepped, he would have been saved from all harm.

This negligence on his part was of the grossest character. Why he did not look where he was walking, and where he was looking, will forever be unexplained; but that his own negligence was the proximate cause of the injury which he received, without which, the injury would not have happened to him is clear, and he is not entitled to recover damages from another for an injury caused by himself. *Dun* v. *R. & Seaboard R. R.*, 78 Va., 645, and cited cases. And we think there was no error in the judgment complained of, and the same must be affirmed.

JUDGMENT AFFIRMED.